620-107-144 May I please report Kenneth Carpenter appearing on behalf of Mr. Howard WIBLE Before I begin, your honors, I need to apologize to the court for the submission of supplemental authority. I'm not quite sure why I did that since I cited it in my reply brief. I apologize to the court. Speaking of bail and suspensions. Yeah, yeah. Sorry. No excuse, just did it. In any event, your honor, Mr. WIBLE is here appealing a decision of the Court of Appeals for The determination of the applicability of this provision of law begins with an examination of what service department records were or were not obtained and considered at the time of the original decision. It is from this starting point that the board made its original error and the veterans court mistakenly affirmed and relied upon a misinterpretation of this regulation. The veterans- What regulation is it that you think is misinterpreted, the new and material evidence one? The 3.156C. And to be clear, even though it is under the new and material evidence section, this really isn't in relationship to new and material evidence as referred to in subparagraph A, which refers to the new and material evidence required to reopen a claim. This is new and material evidence which is received after an original decision has been made by the VA that deals expressly with the VA's subsequent receipt of supplemental service department records. And in this case, the VA received in both 2001 and again in 2005 supplemental service department records. But more than that is required by the regulation. It has to be that the award in this case was based all or in part on the records. And it's not evident to me that this award, the award you're appealing here, was based on anything other than the diagnosis. Except, Your Honor, that the decision that was made in this case, the 2005 decision that made the award, expressly refers to the receipt of the records concerning the court-martial proceedings. I'm sorry, the Article 15 proceedings involved in that case. But referring to something and relying on it aren't necessarily the same thing, are they? No, Your Honor, but I don't believe that when the regulation refers to it in that, as explained in the VA's own published interpretation, that it means it as literally as you are suggesting in your question. It is simply that they received it and it was necessary to the decision that these were relevant records. It was relevant and necessary to establish that this veteran was in combat and had the required stressors in order to make the threshold requirement for the showing of this diagnosis. This is in the limited circumstance of post-traumatic stress disorder, in which the VA has, up until very recently, tied this to the establishment of either combat or creditable supporting evidence confirming or verifying the stressors which occurred, which are the underlying predicate. The underlying predicate for the diagnosis is what happened in service. If these things did not happen in service, then it doesn't meet the necessary threshold for, I'm sorry, I'm- Let me refer you to the board's 2009 decision, page 50 of the joint appendix. The board said, even accepting that this document established the veteran was exposed to combat, as already stated above, at the time of the April 2004 board decision, a stressor had already been confirmed. Thus, this document did not establish a fact that was not previously part of the claims file, and thus could not have been part of the basis for reopening the claim, as it was not new and material evidence. And that is a definition of new and material evidence in regards to 3.156A, for the purposes of reopening. That is not the purpose of 3.156C. 3.156C deals exclusively with the VA's receipt of service department records. Well, I understand that the first sentence, the statement that is made, is that the stressor was already established, and so that there was nothing new that came from the documents that were received. And it is not the newness in the sense of newness for the purpose of reopening, but newness in relationship to the original decision. Were these service department records collected in order to establish that fact at the time of the original proceeding, and at the time of the original proceeding in June of 1983, they were not. They were not obtained. This is, as explained by the VA in its own published account, published interpretation of this regulation, is to deal with the VA's administrative error, administrative deficiency, in not collecting a complete copy of the service department records. So the service department records show a stressor. The service department records as of 2004 already show a stressor. And that's the board's point, is that we had a stressor already. There were some missing records. The missing records that now come in show the exact same thing. And that is not relevant to the application 3.156C. That may be relevant to the application of reopening for purposes of- If that's not relevant, then what is relevant to 3.156C? Whether they were or were not collected at the time of the original decision, in this case in June of 1983. So the records that were collected, but were entirely duplicative of something that's already in the record, the very fact that they weren't collected should give your client an earlier date of entitlement? Should we're- I'm not following your point A to point B logic, obviously. Well, number one, your honor, it's the logic as announced by the VA. The VA published this interpretation and they- C3 says this section is effective on the date of entitlement arose or the date received, the VA received the previously decided claim, whichever is later. And so, I mean, I think that we're still looking at what is the latest date, and the issue is one of entitlement here. The issue, as Judge O'Malley has pointed out, isn't one of whether there was a stressor or not. The purpose of 3.156C, as explained by the VA in its own interpretation, is to overcome the fact that these records were not collected in the first instance. That it's the duty of the VA not to harm the veteran by failing to collect them. In the original determination in 1983, had they gotten these records, that would have established his stressor in 1983, not in 2001 or 2005. The fact here is, is that what we're dealing with- But he didn't have the condition until 2005. He was not diagnosed with this condition, this is a fact finding, until 2005. So whether the stressor existed in 83 is irrelevant to his entitlement, because the condition didn't onset until 2005, according to the fact findings, which I can't review. Respectfully, Your Honor, that misunderstands 3.156C and the reconsideration of the original claim. The whole purpose of 3.156C is to go back and do a retrospective evaluation to determine whether or not what he was in fact suffering from in 83, which they rejected as post-traumatic stress disorder, was in fact post-traumatic stress disorder, based upon a retrospective examination. And what was missing in 1983 and what was missing in the earlier intervening denials was this stressor verification and the dispute about whether or not he did or didn't have the underlying stressor. But even if you were right that somehow this bigger evidence of stressors could affect the medical diagnosis, the bottom line is that it didn't. I mean, in other words, they did refer him for a PTSD analysis, but at that point they said the diagnosis is not as of the earlier points in time, but only later. The purpose of 3.156C is remedial, is to give the veteran the opportunity for a retrospective evaluation. Now that they have determined that he in fact suffers from post-traumatic stress disorder and that it is related by its very nature, this is a delayed onset condition that is related to what happened during his period of active duty service. And they did make those later determinations, but the remedial portion of 3.156C is, is if you didn't get the service records at the original decision, then you get the opportunity. We shall reconsider the original claim, which allows for a retrospective evaluation to determine whether or not that veteran was or was not suffering from- He's got PTSD, but he didn't have it back then? But, no, in 2004 they turned it down. They denied him completely. They said he did not have it, and that he was not entitled to it. After they got the new records, they did reopen, and they did look at it. And they denied it. And they said- Based on the diagnosis? That's correct, Your Honor. And the point of 3.156C is to give him a retrospective evaluation, give him another opportunity to demonstrate that what he was suffering from in 1983 was in fact his post-traumatic stress disorder that they now agree he is suffering from. That doesn't mean he'll get it. It simply means that they shall reconsider it. Reconsideration does not require a favorable outcome to Mr. Wiebel. It does require reconsideration. The VA will reconsider. That's what their regulation says. And they've explained in their published interpretation why they believe that that is necessary, so that the veteran will not have been harmed by the withholding of these records. And these records- I understood your request to us not to be to say that they didn't adequately reconsider, but that we were supposed to say that the earlier effective date is required by this regulation. Is that not what you're arguing? No, this regulation does not require the assignment of an earlier effective date. It requires the reconsideration of the original claim. The original claim was made in February of 1983. And he is entitled under 3.156C, because the VA did not fully collect his service department records in 1983, to get a reconsideration when they finally make the grant. You have the original decision, you have a later award, and then you have the opportunity for reconsideration. And that reconsideration is triggered based upon the fact that those service records were not collected. But it only requires a reconsideration of the original claim. And then they determine whether on that continuum from 1983 to his current effective date, when did he have post-traumatic stress disorder. And if they say he didn't, if they reaffirm what was said in 2004, then that's the end of it. But he is entitled under the VA's own regulation to reconsideration. And he has been denied that right for that reconsideration of his original claim, because the VA did not get his complete service department records. And they were submitted first in 2001, and again, additional records in 2005. See that I'm into my rebuttal time, unless there's further questions. Thank you. Thank you, Mr. Crockett. Mr. Goodman. Good morning, your honors. May it please the court. The outcome of this case depends entirely upon a single fact, and it's undisputed, that Mr. Weibel was not diagnosed with PTSD prior to 2005. He's conceded that in his reply brief at page one, where he states, In this case, if there hadn't been this intervening proceeding, I mean there was another proceeding before this one. But if the first time the new records were before these parties was in this current proceeding, would that change this case? Maybe. If the records that were presented were material, if they changed things somehow, if they were relied upon. Well, let's assume it's all, I mean, let's take the records and choose all of them. If all of the records came in all at once. And for the first time, they're presented to the VA as part of this case. Not here we had an intervening proceeding, and then second time around, he gets diagnosed with PTSD. Would that change, though, if they all had come in in this current proceeding? It probably would, because the board would likely say in that case that those records were used, and it was based all in part or in part on those records that he was ultimately awarded, given an award for PTSD. Because he had never previously been awarded. He had never established a stressor. He needed to establish a stressor, but he also needed to establish PTSD. The reason. Could the scope of the stressor be relevant to the diagnosis? No, Your Honor. In theory, a doctor could look at somebody and say, I don't think this stressor was sufficient. In fact, here, the denials from all four doctors who looked at him, both in 1987 and then 2001, 2003, every doctor who looked at him said, the problem is just you don't have PTSD. It's not that there wasn't enough stressor. We'd be looking at a different case if the doctors had said that. Could it be a differential diagnosis, and the stressor is a factor, and the scope and size of the stressor is one of the factors in the diagnosis? The existence of a stressor. I don't believe the scope is relevant. I have the DSM-IV here. Well, wasn't the existence of the stressor part of the new information, the new evidence? No, because it was already established at this time. In 2001, it was established that there was a stressor, and the board made that factual finding that it was established. I think these points are really important, so I want to hear your answer, because I might be depressed because, I don't know, my hamster died, and that's one level of depression, but I might be seriously much more depressed if some member of my family died, and so I think that the significance of the stressor could be more likely to affect whether or not it's diagnosed as PTSD. The first criterion for diagnosing PTSD is the stressor, and the DSM states that the person has experienced, witnessed, or been confronted with an event or events that involve factual or threatened death or serious injury or a threat to the physical integrity of oneself or others, and the person's response involved intense fear, helplessness, or horror. So that was already established in 2001, that he had that level of stressor. You say it was established. There was evidence in the record that there was combat, but there was no finding that it was established. In fact, they specifically said, we don't address whether or not the stressor was adequate. The Board found in 2009 that it was already established as of 2004, and that's a factual finding that this Court can't address whether it's correct or not, because Your Honor's right, in 2004, it seemed that the Board was saying it didn't reach it, but the Board in 2009 said, as a matter of fact, that it was established as of 2004. So as of that time, there's an established stressor, and the only lack in the record is that he doesn't have PTSD. He didn't have PTSD in 1989. He didn't have PTSD in 2004. And only after he had PTSD in 2006 did the Regional Office award him benefits, and the basis for the benefits, as the Board found, was that he now has PTSD, not anything dealing with the stressor. So do you think that when the Board reopened, they only looked to see whether he had PTSD as of that point in time, or did the Board look more broadly to see at what point the PTSD may have kicked in, especially given the records dating all the way back to 1983 that showed that he was being treated for PTSD? If you look at the Regional Office opinion, the 2006 decision that awarded PTSD, it looks like they did an evaluation of when this PTSD came into place. The decision noted that as of 2004, there was no PTSD, but then discussed the recent psychiatric evaluations in December 2005, and awarded him April 2005. Now, there's a question what exactly is going on there with those couple of months, but that's not what I understand Mr. Wiebel to be bringing to the Court today. As a matter of fact, the Board, looking at this, found that the Veterans Court affirmed that he didn't have a diagnosis until 2006. So is January of 2006 when my review of the record shows that that's his first actual diagnosis of PTSD is 2006. In 2005, he started seeing the doctors about that, but he didn't have an earlier diagnosis. So the question really is when is the first diagnosis, and that's a matter of fact that this Court can't interrupt. The first diagnosis, as he's conceded again on page 1, he says he didn't have a diagnosis prior to 2005. So if he's only arguing about a couple of months earlier, that may be a question, but there's nothing to indicate that he had PTSD prior to 2005. Okay, but I'm still not sure that you answered my question. So the question is did the Board, when it reopened, consider whether he might have had it before and reached that conclusion that he didn't, or did the Board never even consider going back? The Regional Office, when they reopened, they did appear to consider that. Yes. Okay. There's a couple of different things going on. There's a question of this. I'm not sure exactly. Let me change my answer if I could. I'm not sure exactly what the Regional Office was looking at, because you can't tell from that decision. But what the Board said, as a matter of fact, is that the Regional Office had done the analysis and determined that there's no earlier date than 2005. And I think that that's the matter of fact that we have to rely on. I can't see that in the 2006 Regional Office decision. The point of this provision, the reason—let me back up. When the VA changed this 3.156c, they weren't trying to change anything substantively. The point was to make it clearer that when the new and material evidence is submitted, that an earlier effective date is applicable or potentially applicable. Here, the finding by the Board is this wasn't new and material evidence. This doesn't even trigger 3.156c in whole. So whether or not, in answer to Your Honor's question, Judge O'Malley, again— It wasn't new and material evidence because it had come in in that earlier proceeding in 2001 and 2002? Right. So it wasn't relevant. It wasn't— It wasn't relevant because they had already established a couple of years ago— Yes, Your Honor. Yes, Your Honor. And that's the basis for the Board's ultimate decision. Whether or not the Regional Office had done the full analysis that Judge O'Malley is suggesting it would have needed to do if 3.156c were triggered, the Board said 3.156c wasn't triggered anyway because there isn't something here that was relevant enough to trigger it because it was already established in the record. You're saying you think that 3.156c.1, to the extent it uses the word relevant, is that it has to be relevant to the decision-making and not simply relevant to his service? I think it's relevant to the decision-making, yes, Your Honor. And additionally, I'd point to c.3 where it says based all or in part. There's no indication that when they amended 3.156c and struck out new and material evidence that they meant to remove any requirement of materiality or newness. In fact, it still has the word new in it. They struck the new and material evidence phrase from the regulation because they thought that that was confusing because when you normally, under the normal course, submit new and material evidence, you only get the date that you submitted that evidence. And they didn't want that to be confused. 3.156a triggers 3.400, which says explicitly that. So to eliminate that confusion, they struck the phrase new and material evidence. It looks like Mr. Wiebel is relying on a notion that because of that, it doesn't have to be new and material evidence anymore, that it doesn't matter that it's duplicative. His notion is take, for example, somebody who has loss of hearing, and he says the loss of hearing is due to an explosion during service. His notion is that every couple of years he can present another eyewitness account that was in service records of that explosion, and then ultimately, years down the road, he has hearing loss, and the doctor says, okay, now you have hearing loss. You haven't in these last ten exams, but now you have hearing loss, so I'm going to reopen the whole thing and look back because each step along the way you've submitted a new piece of evidence that's a service department record showing the explosion. What the Board is saying here is the explosion was already established. That wasn't a question. The stressor is not at issue. The question was only whether he had PTSD. So because there was no question or stressor. Hearing loss is a different kind of diagnosis. It's a nice analogy, don't get me wrong, but it's a different kind of diagnosis because there are more objective measures, and the fact of an explosion isn't required to know that you don't have hearing loss. That's absolutely correct, Your Honor, and that's why I said in the beginning we'd be dealing with a different case if the diagnosis all along, if what the doctors and the Board had said was he doesn't have PTSD because we can't tell if there's a stressor. That would be a different situation. You just said something that probably you didn't want to because all it makes me want to do is open a can of worms. You said, well, if the diagnosis all along. Well, that's exactly what really bugs me about this case is in 1983 he was diagnosed with PTSD, and they said the missing component was the stressor. So then in 2004 when they say, ah, yes, it turns out there is in fact a stressor, but that whole PTSD thing, no, no, didn't have that. So there's this flip-flopping on the diagnosis itself. So when you made the mistake, I probably wouldn't have covered you with this, but you actually stated in open court it'd be one thing if the diagnosis all along. Well, my goodness, here we have the exact opposite of that. So why doesn't the government settle these things? What are you doing here? This man was diagnosed with PTSD, and he found no stressor. Then later they said, oh, yes, a stressor, but no PTSD. And now, yes, PTSD, we're back to that, and yes, stressor. So why doesn't that suggest that he had it all along? If that were the factual situation, that would be, we might consider settlement. In 1983, he didn't have PTSD. He was found to. He wasn't. He was found to have PTSD. I know that he wasn't because, and this is in the joint appendix at 73 to 77. How do you know he wasn't? As a factual finding, the Board found that he wasn't. In joint appendix page 76, the Board says, the findings of the examination were insufficient to establish that the veteran actually experiences survivor guilt, flashbacks, and nightmares of specific Vietnam events. Joint appendix 76. 76, Your Honor. This is the supplemental portion. Mine doesn't go up that high. It's the supplemental portion. Because I had the same thought, Your Honor, Judge Moore. When I first looked at it, it looked like he had PTSD and then he didn't have PTSD, and then he had PTSD, and so what's really going on here? As a factual matter, the Board said he didn't have PTSD. Well, the Board said they were wrong to call it PTSD, but he was found to have. In 1983, he was found to have PTSD. The regional office said he appears to have PTSD. So the Board followed up on that and sent him to two doctors in 1987. Okay, but what page of the record is the 1983 PTSD? The 1983 is joint appendix page 13. It says, the examiner noted that it seems to be related to PTSD. So the Board followed up on that and said, let's find out if that's true, and sent him to two doctors in 1987, and those doctors evaluated him and said they couldn't elicit any stressors of PTSD, meaning stressors in a different sense. You make a loud noise and see if he jumps, that kind of thing. So in the lab, they looked at him in the clinic, and they said, he doesn't have PTSD. That's what the two doctors said in 1987. So the Board said in 1989, as a matter of fact, the clinical evidence is not sufficient so as to warrant a diagnosis of PTSD, and that's on joint appendix page 77. So he didn't have PTSD. Have you seen the Mitchell case? It doesn't ring a bell, Your Honor. Okay. The Veterans Court decided this case fairly recently, actually February of this year, and in it, they discussed this regulation and made it clear that if there's any part of the Board's ultimate determination that is affected in any way by the new records, it's a very broad analysis that, therefore, this provision kicks in. In this instance, the stressor was at least described differently by the new records and more broadly and more seriously by the new records. Are you saying that there is no involvement at all? I mean, you have to have a stressor, and you have to have the diagnosis. I think, Your Honor, it's a matter of fact whether those records were relied upon, and the Board said here they weren't. Now, we could evaluate the regional office's decision and say, no, it was relied upon, but that's a matter of fact, and the Board said it wasn't. So I don't think this Court can alter that factual finding. I see I've gone over my time, if there are no further questions. We respectfully request that this Court affirm the decision of the Veterans Court. Thank you. May I please the Court? In Mayhew, the Court observed that the VA's published interpretation of 3.156C said, specifically the VA proposed to clarify, quote, VA's current practice regarding newly received service department records by removing the new and material evidence requirement in 3.156C. And then it goes on to say, eliminating the requirement to submit the supplemental service department record as a prerequisite to the reconsideration and retroactive evaluation of the disability. So there is no longer that connection. They removed that dependency, that it had to be a prerequisite to the consideration of the evaluation. The ultimate connection is the grant, and as Judge Moore has correctly pointed out, a psychiatrist diagnosed this man in 1983 with post-traumatic stress disorder. The VA now comes to you and says, oh, no, it's... The problem is Mr. Goodman quite adeptly pointed out to me that it wasn't really such a clear diagnosis. It was, they used the word probably once and possibly on the next page, and then they go on to say, well, look, even if he had it, there's no stressor, which isn't the same thing as saying he does have it. But that's the whole point of the reconsideration. The retrospective evaluation is to go back and say whether those maybes that were referenced in the record, now that we have established entitlement. When entitlement is not established, that's the end of the story. The claim is denied. But when the claim is eventually reopened and granted as here, and they allow the benefit, and you discover that in the original proceeding, all of the service records were not collected, and you didn't see the government defending the fact that, oh, no, we collected all the service records, because they didn't. Well, isn't one of the prerequisites for PTSD a stressor? Yes, Your Honor. So could they maybe... Would your best argument maybe be that they couched the probably and possibly language because they acknowledged in this thing they didn't have a stressor, and therefore they can't call it PTSD? That's absolutely correct. And so it isn't that he didn't have PTSD, but the absence of a proven stressor prohibited them from actually giving such a thing. And in the original 1983 decision, they said that there was no evidence of combat. That's what the ultimate service department records establish, that this man was in fact in combat. And then it becomes highly pertinent to whether or not he was or was not in fact, which is the whole purpose of reconsideration and the retrospective evaluation. Let me be clear. What you're seeking is not a law of benefits. It's simply that this case goes back later to have an analysis of what the deal is with respect to the entire 1980s. The decision of the board was that 3.156C was not applicable. That is wrong. 3.156C is applicable. This court needs to remand to the Veterans Court with instructions to the Veterans Court to remand to the board to consider and apply 3.156C. I think your time is up. It is. I was just wondering if there was any further follow-up. Thank you very much, Your Honor. Thank you. Thank both counsel. The case is submitted. That concludes our proceedings for this morning.